IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ROLANDO HERNANDEZ,
and VICTOR DAVALOS AMARO,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

v.

PROGRESSIVE AMERICAN
INSURANCE COMPANY, and
PROGRESSIVE EXPRESS
INSURANCE COMPANY,

      Defendants.
_____

CASE NO.:

CLASS ACTION

**CLASS ACTION COMPLAINT FOR DAMAGES**

The Plaintiffs, ROLANDO HERNANDEZ ("Mr. Hernandez") and VICTOR DAVALOS AMARO ("Mr. Davalos Amaro") (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, file this Class Action Complaint against Progressive American Insurance Company ("Progressive American") and Progressive Express Insurance Company ("Progressive Express") (collectively "Defendants"), and in support further state the following:

### I. INTRODUCTION

1. Defendants make their insureds a simple promise – if the insured suffers a total loss to an insured vehicle, Defendants will pay the actual cash value of the insured vehicle. Black-letter Florida law comports with longstanding principles of insurance in setting forth that actual cash value includes costs likely to be incurred upon replacement. Recent case law has only reconfirmed these longstanding and clear principles. And yet, in defiance of such well-established law, Defendants nevertheless refuse to abide by their contractual promise and decline to include such

costs in making payment to insureds after the occurrence of a total loss.

2.   Furthermore, Defendants charge the same premium irrespective of whether a vehicle is owned/financed or leased, making absolutely no distinction in the Policy between owned/financed and leased vehicles, such that the promise regarding coverage is the same for both. And yet, when it comes time to actually provide coverage, Defendants, for the first time, distinguish between owned/financed vehicles and leased vehicles and provide *less* coverage to leased vehicles despite making precisely the same promise. In both cases, the coverage provided is less than what insureds contract for in the Policy.

3.   This action is brought by Mr. Hernandez, a named insured under a Progressive American automobile policy issued for auto physical damage requiring payment of "Actual Cash Value" or ACV. This action is also brought by Mr. Davalos Amaro, a named insured under a Progressive Express automobile policy issued for auto physical damage also requiring payment of ACV.

4.   Plaintiffs bring this action on behalf of themselves and all other similarly situated insureds, all of whom suffered harm resulting from the same practice – Defendants' refusal to abide by the clear and simple contractual promise to pay the ACV of insured vehicles. The promise to pay ACV is a promise to pay the adjusted vehicle value (or what Defendants call "Market Value"), plus state and local sales tax based on the adjusted vehicle value, plus title and registration transfer fees, less any deductible and salvage-retained value. Instead of fulfilling their contractual obligation, Defendants, as a matter of uniform procedure, refuse to include title or registration transfer fees to any insured. If an insured leases the total-loss vehicle, like Mr. Hernandez, Defendants also refuse to the pay the amount in sales tax owed under the Policy.

5.   Such failures constitute a breach of contract and a breach of the insurance policy,

and such breaches occur uniformly as to every total-loss owned insured and every total-loss leased insured in the State of Florida during the relevant time period.

## II. JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) the Plaintiffs are members of the putative classes which consist of at least 100 members and, further, Plaintiffs and a substantial number of putative class members are citizens of different states than Defendants; (b) the amount-in-controversy exceeds $5 million dollars, exclusive of interest and costs; and (c) none of the exceptions under § 1332 are applicable.

7. Defendants are subject to personal jurisdiction in this district. Defendants conduct substantial business in this district and have offices, employees and agents throughout this district.

8. Further, a substantial portion of the acts and course of conduct giving rise to the claims alleged herein occurred within the district. Thus, venue is proper in this district.

## III. THE PARTIES

9. At all times material hereto, Rolando Hernandez was domiciled in Miami-Dade County, Florida, and was a citizen of the State of Florida.

10. At all times material hereto, Victor Davalos Amaro is and was domiciled in Palm Beach County, Florida, and is a citizen of the State of Florida.

11. At all times material hereto, Defendants are and were foreign corporations located in the State of Ohio and authorized to do business in Florida. Defendants are both incorporated in Ohio with principal office and headquarters located at 6300 Wilson Mills Road, Mayfield, Ohio 44143.

## IV.  FACTUAL ALLEGATIONS

### a. The Policy

12. Progressive American and Progressive Express issue policies containing materially identical language concerning physical damage coverage and payment for loss in the event of a total loss to insured vehicles. For simplicity's sake, attached hereto as Exhibit A is the policy ("Policy") issued to Mr. Hernandez.

13. That Policy defines the "insured auto" as the auto listed in the declarations page. Policy at 1. "Property damage" is defined, in relevant part, as "physical damage to, destruction of, or loss of use of tangible property." Policy at 2.

14. Irrespective of whether the insured owns, finances, or leases the insured vehicle, such vehicle is considered "owned" for purposes of the Policy. Policy at 2.

15. In Part IV ("Damage to a Vehicle") the Policy states that, under "Collision" coverage, Defendants will pay for "sudden, direct and accidental loss to a covered auto…resulting from collision." Policy at 23. Under "Comprehensive" coverage, Defendants will pay for "sudden, direct and accidental loss to a covered auto…that is not caused by collision."

16. For purposes of providing payment to insureds after the occurrence of a total loss, there is no material difference between a total loss adjusted under "Collision" coverage and a total loss adjusted under "Comprehensive" coverage.

17. In Part IV, Defendants include a section entitled "Limits of Liability." Policy at 28. Therein, the Policy asserts that the "limit of liability for loss to a covered auto … is the actual cash value of the stolen or damaged property at the time of the loss reduced by the applicable deductible." Id.

18. Later, Defendants explain that ACV is determined by the market value, age, and

physical condition of the vehicle. Policy at 29. ACV is not further defined in the Policy. Part IV includes specific words which are given defined meanings; such list, however, does not include ACV, which is not bolded when used in the Policy. Policy at 26.

19. The Policy does not contain any language excluding sales tax, title transfer fees, or registration transfer fees from the definition of ACV, nor excluding such costs from payment upon the occurrence of a total loss. The Policy also does not require insureds to incur any costs to trigger payment – rather, the Policy clearly promises payment *irrespective* of the amount incurred, if any.

20. The Policy imposes no condition precedent to receiving ACV payment upon the occurrence of a total loss.

21. The aforementioned Policy language relevant to the total loss of an insured vehicle and the requirement to pay the ACV for a total-loss vehicle is identical in every policy issued to every insured by Progressive American and Progressive Express during the relevant time period.

22. Further, the policy language issued by Progressive American and Progressive Express is uniform in all relevant and material ways.

23. The promise to provide ACV is the same promise to pay the same amount irrespective of replacement. Whether the insured replaces the total-loss vehicle with a more expensive vehicle, a less expensive vehicle, or does not replace the vehicle at all, the amount owed pursuant to the policy promise is the same.

24. The promise to provide ACV is the same promise to pay the same amount irrespective of what was paid on the total-loss vehicle. It is irrelevant whether the total-loss vehicle was a gift (and the insured paid nothing for the vehicle), or whether the insured was an excellent negotiator (and underpaid for the vehicle), or whether the insured was a terrible negotiator (and overpaid for the vehicle). Under each of the aforementioned scenarios – or any other hypothetical

– the policy promise (and the amount owed) is unchanged.

### b. Plaintiffs' Total Loss Claim Experiences

25. At all times material hereto, Rolando Hernandez leased a 2016 Lexus NX 200t F Sport, VIN # JTJYARBZ9G2029735.

26. Said vehicle was insured pursuant to a policy issued by Defendant Progressive American. Exhibit B (Declarations Sheet).

27. On or about October 23, 2017, the vehicle was involved in an accident after which the vehicle was declared to be a total loss. As a result of said accident, Mr. Hernandez filed a claim for property damage, claim number 16-2855741-01.

28. Progressive American utilized a third-party vendor in determining that the vehicle had a base value of $40,960.08. To that amount, Progressive American applied a "Condition Adjustment" of $40.65 and an "After Market Parts Adjustment" of $400.00, for an adjusted vehicle value of $41,400.73. To that amount, Progressive American applied the deductible of $500.00, for a "Settlement Value" of $40,900.73. Exhibit C (Hernandez Valuation Report).

29. The base value and adjusted vehicle value were calculated by a third-party program called Mitchell, which bases vehicle valuations on the purchase price of comparable vehicles in the area.

30. No amount for sales tax, title transfer fees, or registration transfer fees was included in the Valuation Report.

31. Subsequently, Progressive American issued a breakdown of a payment, which incorporated the amounts listed in the Market Valuation Report. To that amount, Progressive American added only $142.56 in sales tax – a mere 0.003% of the vehicle value. Exhibit D (Hernandez Settlement Summary).

32. Further, Progressive American did not add any amount for title transfer fees or registration transfer fees.

33. Progressive American's failure to provide coverage for such costs constituted a breach of its insurance policy.

34. At all times material hereto, Mr. Davalos Amaro owned a 2017 Toyota Camry SE 4D, VIN # 4T1BF1FK7HU724662.

35. Mr. Davalos Amaro insured the vehicle under a policy issued by Progressive Express. Exhibit E (Declarations Sheet).

36. On or about November 9, 2018, Mr. Davalos Amaro was involved in a motor vehicle accident after which the vehicle was declared to be a total loss. As a result of said accident, Mr. Davalos Amaro filed a claim for property damage, claim number 18-3468852-01.

37. Progressive Express utilized Mitchell in determining that the vehicle had a base value of $15,267.37, from which Progressive Express subtracted a "Condition Adjustment" of $21.92, for an adjusted vehicle value of $15,245.45. To that amount, Progressive Express subtracted the deductible of $1,000.00, for a "Settlement Value" of $14,245.45. Exhibit F (Davalos Amaro Valuation Report).

38. Subsequently, Progressive Express provided a payment breakdown, which incorporated the numbers found in the Valuation Report, indicating a total amount of $15,210.18. Exhibit G (Davalos Amaro Settlement Summary). No amount for title transfer fees or registration transfer fees was included in the settlement amount.

39. Progressive Express's failure to provide coverage for such costs constitutes a breach of its insurance policy.

40. Plaintiffs paid all premiums owed and otherwise satisfied all conditions precedent

such that their insurance policy was in effect and operational at the time of the accident.

### c. Taxes and Fees

41. Sales tax is a mandatory cost imposed by the State of Florida on every vehicle purchase. It is impossible – indeed, it is illegal – to purchase a vehicle without paying applicable sales tax.

42. During the relevant time period, the State of Florida imposed a sales tax of 6% on all relevant transactions. Furthermore, Florida counties impose local surtaxes ranging from 0.5% to 2% on the first $5,000 of a purchase.

43. Title transfer fees and registration transfer fees are mandatory applicable fees that must be paid to replace any vehicle in the State of Florida.

44. Florida law requires that all vehicles be properly titled in order to be legally driven on Florida roadways. In fact, by operation of law, a person does not acquire marketable title to a vehicle – and no court is permitted to recognize a right, claim, or interest of any kind in the vehicle – until the vehicle is properly titled.

45. The fee to transfer title to a vehicle is, at minimum, $75.25.

46. Florida law also requires that all vehicles have proper license plate (or tag) in order to be legally driven on Florida roadways. The fee to transfer license plate or tag is $4.60.

47. In breach of their contracts with Plaintiffs, Defendants did not pay a settlement amount equal to title transfer fee + tag transfer fee + 6% sales tax (plus applicable surtax) of the adjusted vehicle value, less any applicable deductible, in making payment for Plaintiffs' total loss. In doing so, Defendants failed to include the full amount of ACV as required by the Policy.

48. Florida law is clear that courts cannot limit the scope of a term, if it is not defined in the policy, to a narrow definition that benefits the insurer; in fact, if policy language is

susceptible to more than one reasonable interpretation, it is construed in the light that would grant coverage, i.e. to the benefit of the insured and against the insurer. Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779 (Fla. 2004).

49. The Eleventh Circuit interpreted Florida law concerning ACV policies as requiring payment of costs reasonably likely to be incurred upon replacement. Mills v. Foremost Insurance Co., 511 F.3d 1300, 1306 (11th Cir. 2008).

50. Defendants' promise to pay the ACV of the insured vehicle includes costs reasonably likely to be incurred upon property replacement. Nevertheless, Defendants decline to actually include such charges in making ACV payment to total-loss insureds, such as Plaintiffs, thereby breaching the contracts with insureds.

## V. CLASS ALLEGATIONS

### a. Class Definitions

51. Plaintiffs each bring this action respectively seeking representation of a class ("Classes") pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

52. Mr. Hernandez brings this action as class representative, individually and on behalf of all other persons or entities similarly situated ("Progressive American Class Members"), more specifically defined as follows:

**PROGRESSIVE AMERICAN CLASS**

All insureds under any Florida policy issued by Progressive American Insurance Company with the same operative policy language covering a vehicle with auto physical damage coverage for comprehensive or collision loss where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the five year time period prior to the date on which this lawsuit was filed until the date of any certification order.

53. Mr. Davalos Amaro brings this action as class representative, individually and on behalf of all other persons or entities similarly situated ("Progressive Express Class Members"),

9

more specifically defined as follows:

### PROGRESSIVE EXPRESS CLASS

All insureds under any Florida policy issued by Progressive Express Insurance Company with the same operative policy language covering a vehicle with auto physical damage coverage for comprehensive or collision loss, where such vehicle was declared a total loss, who made a first-party claim for total loss, and whose claim was adjusted as a total loss, within the five year time period prior to the date on which this lawsuit was filed until the date of any certification order.

### b. Numerosity

54. The precise number of Progressive American class members require confirmation through the discovery process. However, upon information and belief, Progressive American writes hundreds of millions of dollars of physical damage coverage premiums, and the amount of class members in similar litigation numbered in the thousands. Thus, any reasonable inference supports the allegation that the number of persons affected by Progressive American's unlawful are sufficiently numerous such that joinder of all class members is impractical.

55. The same is true as to Progressive Express, which is also a large insurer writing hundreds of millions of dollars in premiums. For the same reason, it is clear that the number of insureds harmed by the practice set forth herein exceeds the requirements under Rule 23(a)(1) such that numerosity is established and joinder of all class members is impractical.

56. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendants pursuant to standardized insurance policy language, and results in the retention by Defendants of insurance benefits and monies properly owed to Plaintiffs and the class members. Thus, numerosity as to both Classes is established.

### c. Commonality

57. Plaintiffs' claims raise questions of law and fact common to all members of the Classes within the meaning of FRCP 23(a)(2).

58. As to both Classes, said common questions include, but are not limited to, the following: (a) whether, under the standardized policy language, Plaintiffs and the class members are owed sales tax amounting to 6% (plus local surtax) of the adjusted vehicle value; (b) whether, under the standardized policy language, Plaintiffs and the class members are owed title transfer fees and registration transfer fees.

59. The central issues in this litigation turn on interpretation of materially identical policy provisions; thus, this case is well-suited for classwide adjudication. Defendants and all class members are bound by the same materially identical policy terms.

### d. Typicality

60. Plaintiffs' claims are typical to those of all members of the respective Classes under Rule 23(a)(3) because such class members are similarly affected by Defendants' uniform failure to make the full ACV payment required by its Policy upon the total loss of insured vehicles. The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiffs' policies.

61. Plaintiffs and the members of the Classes were injured through Defendants' uniform misconduct. Further, Plaintiffs' and Class Members' legal claims arise from the same core practices, namely, the failure to make full ACV payment, including ACV sales tax and/or title and registration transfer fees, for first-party total loss claims. Plaintiffs' claims are based upon the same legal theories as those of the class members. Plaintiffs suffered the same harm as all the other class members.

62. Plaintiffs' interests are coincident with and not antagonistic to those of other class members, nor are the Plaintiffs subject to any unique defenses.

### e. Adequacy

63. Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiffs have no conflicts of interest with members of the Classes.

64. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in prosecuting and defending class actions. Plaintiffs' counsel have successfully litigated other class action cases including ones similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total-loss fees after total losses.

### f. Predominance

65. The previously articulated common issues of fact and law predominate over any question solely affecting individual class members.

66. As to both Classes, this action presents an issue of form contract interpretation, with identical material terms, such that upon interpretation of the contract, every class members' claim will be almost entirely resolved in a single stroke. The single predominant issue – and the issue the resolution of which entirely controls the litigation – is whether the form policy language at issue requires payment of sales tax, title transfer fees and registration transfer fees.

67. To the extent there are any individual issue at all – for instance, the amount of sales tax owed – such issue is a purely ministerial function and does not preclude class treatment.

### g. Superiority

68. Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because it is desirable to concentrate the litigation of the class members' claims in one forum, as it will conserve party and judicial resources

and facilitate the consistency of adjudications. Furthermore, because the damages suffered by individual lass members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for to seek individual redress for the wrongs done to them. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

69. The issues related to Plaintiffs' claims do not vary from the issues relating to the claims of the other members of the Classes such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

70. Certification of the Classes is also supported by the following considerations:

a. The relatively small amount of damages that members of the Classes have suffered on an individual basis would not justify the prosecution of separate lawsuits;

b. Counsel in this class action is not aware of any previously filed litigation against the Defendants in which any of the members of the class are a party and which any question of law or fact in the subject action can be adjudicated; and

c. No difficulties would be encountered in the management of Plaintiffs' claim on a class action basis, because the Classes are readily definable, and the prosecution of this class action would reduce the possibility of repetitious litigation.

**COUNT I: CLAIM FOR BREACH OF CONTRACT BY PLAINTIFF HERNANDEZ AGAINST DEFENDANT PROGRESSIVE AMERICAN**

71. Paragraphs 1-33, 40-52, 54, and 56-70 are hereby incorporated by reference.

72. This count is brought by Mr. Hernandez, individually and on behalf of the Progressive American Class Members.

73. Mr. Hernandez was party to an insurance contract with Progressive American as described herein. All Progressive American Class Members were parties to an insurance contract

with Defendant Progressive American containing materially identical terms.

74. The interpretation of Mr. Hernandez's and all Progressive American Class Members' insurance Policies is governed by Florida law.

75. Mr. Hernandez and all Progressive American Class Members made a claim determined by Defendant Progressive American to be a first-party total loss under the insurance policy, and determined to be a covered claim.

76. Defendant Progressive American, by paying the total-loss claim, determined that Mr. Hernandez and each Progressive American Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies to be paid on his or her total loss.

77. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Mr. Hernandez and every Progressive American Class Member were owed the actual cash value of the vehicle, including $75.25 in title transfer fees, $4.60 in registration transfers fees, and sales tax amounting to 6% (plus local surtax) of the adjusted vehicle value of the total-loss vehicle, less any applicable deductible.

78. Defendant Progressive American failed to make such payment to Mr. Hernandez and every Progressive American Class Member.

79. Defendant Progressive American's failure to provide the promised coverage constitutes a material breach of contract with Mr. Hernandez and every Progressive American Class Member.

80. As a result of said breaches, Mr. Hernandez and the Progressive American Class Members are entitled under Progressive American's insurance policies to sums representing the benefits owed under the Policy as set forth herein, as well as costs, prejudgment and postjudgment

interest, and other relief as is appropriate.

81. In addition, Mr. Hernandez and the Progressive American Class Members are entitled to an award of attorney's fees and costs pursuant to § 627.428, Fla. Stat. and all other statutory or contractual provisions allowing for attorney's fees and costs.

### COUNT II: CLAIM FOR BREACH OF CONTRACT BY PLAINTIFF DAVALOS AMARO AGAINST DEFENDANT PROGRESSIVE EXPRESS

82. Paragraphs 1-24, 34-51, 53, and 55-70 are hereby incorporated by reference.

83. This count is brought by Mr. Davalos Amaro, individually and on behalf of the Progressive Express Class Members.

84. Ms. Davalos Amaro was party to an insurance contract with Defendant Express as described herein. All Progressive Express Class Members were parties to an insurance contract with Defendant Progressive Express containing materially identical terms.

85. The interpretation of Mr. Davalos Amaro's and all Progressive Express Class Members' insurance Policies is governed by Florida law.

86. Mr. Davalos Amaro and all Progressive Express Class Members made a claim determined by Defendant Progressive Express to be a first-party total loss under the insurance policy, and determined to be a covered claim.

87. Defendant Progressive Express, by paying the total loss claim, determined that Mr. Davalos Amaro and each Progressive Express Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies to be paid on his or her total loss.

88. Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Mr. Davalos Amaro and every Progressive Express Class Member were owed the actual cash value of the vehicle, including $75.25 in title transfer fees, $4.60 in registration

transfers fees, and sales tax amounting to 6% (plus local surtax) of the adjusted vehicle value of the total-loss vehicle, less any applicable deductible.

89. Defendant Progressive Express failed to make such payments to Mr. Davalos Amaro and every Progressive Express Class Member.

90. Defendant Progressive Express's failure to provide the promised coverage constitutes a material breach of contract with Mr. Davalos Amaro and every Progressive Express Class Member.

91. As a result of said breaches, Mr. Davalos Amaro and the Progressive Express Class Members are entitled under Progressive Express's insurance policies to sums representing the benefits owed under the Policy as set forth herein, as well as costs, prejudgment and postjudgment interest, injunctive relief and other relief as is appropriate.

92. In addition, Mr. Davalos Amaro and the Progressive Express Class Members are entitled to an award of attorney's fees and costs pursuant to § 627.428 Fla. Stat. and all other statutory or contractual provisions allowing for attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Rolando Hernandez, individually and on behalf of the Progressive American Class, and Plaintiff Victor Davalos Amaro, individually and on behalf of the Progressive Express Class, demand a trial by jury on all triable issues and seeks and prays for relief and judgment as follows:

- For an Order certifying this action as a Class Action on behalf of the Classes described above;
- For an award of compensatory damages in amounts owed under the Policies;
- For all other damages according to proof;

- For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Fla. Stat. § 627.428;

- For costs of suit incurred herein;

- For pre and post judgment interests on any amounts awarded;

- For other and further forms of relief as this Court deems just and proper.

Dated: June 3, 2019

By: *Jeff Ostrow*
Jeff Ostrow
Florida Bar No. 121452
ostrow@kolawyers.com
Jonathan Streisfeld
streisfeld@kolawyers.com
Florida Bar No. 117447
Joshua Levine
levine@kolawyers.com
Florida Bar No. 91807
**KOPELOWITZ OSTROW**
**FERGUSON WEISELBERG GILBERT**
One West Las Olas, Suite 500
Fort Lauderdale, FL 33301
Telephone: (954) 525-4100
Facsimile: (954) 525-4300

Jacob Phillips, Esq.
Florida Bar No. 120130
jacob.phillips@normandpllc.com
Ed Normand, Esq.
Florida Bar No. 865590
ed@ednormand.com
**NORMAND PLLC**
3165 McCrory Place, Suite 175
Orlando, FL 32803
Telephone: 407-603-6031

Scott Edelsberg
Florida Bar No. 100537
scott@edelsberglaw.com
Jordan D. Utanski
Florida Bar No. 119432
utanski@edelsberglaw.com
**EDELSBERG LAW, PA**
19495 Biscayne Blvd. #607
Aventura, FL 33180
Telephone: (305) 975-3320

Andrew J. Shamis
Florida Bar No. 101754
ashamis@shamisgentile.com
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 400
Miami, Florida 33132
Telephone: (305) 479-2299
Facsimile: (786) 623-0915